[Civ. No. 14362. Third Dist. July 11, 1974.]

LAURENCE E. MATCHETT, Petitioner, v.
THE SUPERIOR COURT OF YUBA COUNTY, Respondent;
MALCOLM L. PETWAY et al., Real Parties in Interest.

**COUNSEL**

Freitas, Allen, McCarthy, Bettini & MacMahon and Richard Bettini for Petitioner.

No appearance for Respondent.

Lawrence Handelman, Hassard, Bonnington, Rogers & Huber, Leonard & Lyde, Albert B. Norris, Terence Keeley, and Bledsoe Smith; Cathcart, Johnson & Rogers for Real Parties in Interest.

## OPINION

**FRIEDMAN, Acting P. J.**—Petitioner Matchett is plaintiff in a medical malpractice action. Two of the defendants are Dr. Malcom M. Petway and the Rideout Memorial Hospital. The complaint alleges that Matchett, a patient in the hospital, suffered injuries resulting from negligent treatment by the doctor and from the hospital's negligence in admitting and retaining the doctor on its staff without adequate inquiry into or controls over his competence.

Matchett sought pretrial discovery of hospital and staff records pertaining to Dr. Petway's selection and retention, as follows: the hospital's "personnel and/or staff file," the files of the credentials committee of the hospital staff, its executive committee, its tissue committee and its records committee. Assigning Evidence Code section 1157 as authority, the superior court denied the discovery request in its entirety.[1] Matchett seeks a writ of mandate directing the superior court to order discovery.

According to current judicial policy, reviewing courts will entertain applications for prerogative writs to control discovery, but only sparingly and to review questions of first impression and general importance. (*Rudnick* v. *Superior Court* (1974) 11 Cal.3d 924, 928 [114 Cal.Rptr. 603, 523 P.2d 643], filed July 5, 1974.)

---

[1] Enacted in 1968, Evidence Code section 1157 provides: "Neither the proceedings nor the records of organized committees of medical staffs in hospitals having the responsibility of evaluation and improvement of the quality of care rendered in the hospital or medical review committees of local medical societies shall be subject to discovery. Except as hereinafter provided, no person in attendance at a meeting of any such committee shall be required to testify as to what transpired thereat. The prohibition relating to discovery or testimony shall not apply to the statements made by any person in attendance at such a meeting who is a party to an action or proceeding the subject matter of which was reviewed at such meeting, or to any person requesting hospital staff privileges or in any action against an insurance carrier alleging bad faith by the carrier in refusing to accept a settlement offer within the policy limits.

"The prohibitions contained in this section shall not apply to medical society committees that exceed 10 percent of the membership of the society, nor to any such committee if any person serves upon the committee when his own conduct or practice is being reviewed."

We issued an order to show cause because Evidence Code section 1157 had not been construed in any reported decision. (See, however, *American Mut. Liab. Ins. Co.* v. *Superior Court* (1974) 38 Cal.App.3d 579, 597 [113 Cal.Rptr. 561].)

 Section 1157 specifies that the records of a medical staff committee are immune from discovery when the committee has "the responsibility of evaluation and improvement of the quality of care rendered in the hospital . . . ." In passing upon the claim of immunity, a court must have before it facts which allow it to match the staff committee's mission and function against the specifications of the statute. The trial court record in the present case is seriously flawed. The burden of establishing entitlement to nondisclosure rested with the party resisting discovery, not the party seeking it. (*Sierra Vista Hospital* v. *Superior Court* (1967) 248 Cal.App.2d 359, 365 [56 Cal.Rptr. 387].) Thus the moving papers of Matchett, the plaintiff, supplied only a cursory description of the medical staff committees whose records he wanted to see. In resisting discovery, defendant Petway presented no facts at all. He filed only an argumentative memorandum declaring: "The documents sought are clearly not subject to discovery and are privileged pursuant to Evidence Code section 1157."

 In the present proceeding defendant Petway, as real party in interest, rests his case upon the sparse facts revealed by his opponents' papers. Courts should be reluctant to lighten the burden of the party claiming nondisclosure, since he has superior access to the facts surrounding his claim of exemption. Nevertheless, we are not disposed to pivot our decision on inadequate draftsmanship. It is more vital that the statute be fulfilled. We avail ourselves of Evidence Code section 452, subdivision (h), to take judicial notice of nationwide, generally accepted standards describing the organization and functions of medical staffs and medical staff committees in accredited hospitals.[2]

---

[2]The complaint alleges (and there is no denial) that Rideout Memorial Hospital is accredited by the Joint Commission on Accredited Hospitals.

The Joint Commission, which has its headquarters in Chicago, is sponsored by the American College of Surgeons, the American College of Physicians, the American Hospital Association, and the American Medical Association. It conducts a nationwide, voluntary survey and accreditation program for hospitals. From time to time it has published and revised operating criteria for hospitals seeking to acquire or retain accredited status. The federal Medicare Act recognizes the Joint Commission's accreditation and its standards as benchmarks. (See 42 U.S.C. § 1395x.)

The current standards of the Joint Commission are published in Accreditation Manual for Hospitals, a looseleaf publication, the current version being copyrighted in 1971 and updated by supplements. In addition to the Accreditation Manual, a pertinent publication of the Joint Commission is Guidelines for the Formulation

## I

 It is at once apparent that the trial court's order was too sweeping. The medical staff immunity described in section 1157 extends to, first, the proceedings, and second, the records of the described staff committees. It does not embrace the files of the hospital administration (as distinguished from staff). The trial court should have inquired into the existence of a hospital administration file concerning the doctor and, if such a file existed, should have permitted its inspection, excluding any portions which reflected the proceedings of staff committees conforming to the specifications of the immunity statute.

## II

 Petitioner points to that portion of section 1157 (fn. 1, *supra*) which declares: "The prohibition relating to discovery or testimony shall not apply . . . to any person requesting hospital staff privileges . . . ." He views this exception as a limitation which makes the immunity inoperative in a lawsuit charging the hospital with negligent selection or retention of "any person requesting hospital staff privileges."

The contention rests upon an interpretation which is inconsistent with the statute's objective. In an accredited hospital, the organized medical staff is responsible to the hospital governing body for the quality of in-hospital medical care; it evaluates the qualifications of applicants and holders of staff privileges; it recommends appointment, reappointment, curtailment and exclusion from staff privileges; it provides peer group methods for reviewing basic medical, surgical and obstetrical functions. (Accreditation Manual: Governing Body and Management, p. 6; Medical Staff, pp. 5-7; Medical Record Services, p. 3.) When medical staff committees bear delegated responsibility for the competence of staff practitioners, the quality of in-hospital medical care depends heavily upon the committee members' frankness in evaluating their associates' medical skills and their objectivity in regulating staff privileges. Although composed of volunteer professionals, these committees are affected with a strong element of public interest.

 California law recognizes this public interest by endowing the practitioner-members of hospital staff committees with a measure of immunity from damage claims arising from committee activities. (Civ. Code,

of Medical Staff Bylaws, Rules and Regulations, Departmentalized Hospitals (1971). In this opinion we shall refer to these publications, respectively, as "Accreditation Manual" and "Guidelines."

§ 43.7; *Ascherman* v. *San Francisco Medical Society* (1974) 39 Cal.App. 3d 623 [114 Cal.Rptr. 681].) Evidence Code section 1157 expresses a legislative judgment that the public interest in medical staff candor extends beyond damage immunity and requires a degree of confidentiality. It was enacted in 1968 in apparent response to this court's decision in *Kenney* v. *Superior Court* (1967) 255 Cal.App.2d 106 [63 Cal.Rptr. 84]. There we sustained a malpractice plaintiff's claim to discovery of hospital staff records which might reveal information bearing upon the competence of the defendant doctor. In *Kenney* only the doctor was a defendant, not the hospital. Nevertheless, a public policy question was raised by malpractice plaintiffs' access to medical files revealing committee investigations and appraisals of their peers. Section 1157 was enacted upon the theory that external access to peer investigations conducted by staff committees stifles candor and inhibits objectivity.[3] It evinces a legislative judgment that the quality of in-hospital medical practice will be elevated by armoring staff inquiries with a measure of confidentiality.

This confidentiality exacts a social cost because it impairs malpractice plaintiffs' access to evidence. In a damage suit for in-hospital malpractice against doctor or hospital[4] or both, unavailability of recorded evidence of incompetence might seriously jeopardize or even prevent the plaintiff's recovery. Section 1157 represents a legislative choice between competing public concerns. It embraces the goal of medical staff candor at the cost of impairing plaintiffs' access to evidence.

The statute, then, is aimed directly at malpractice actions in which a present or former hospital staff doctor is a defendant. The statutory exception for "any person requesting hospital staff privileges" cannot be construed as plaintiff contends. To all appearances the exception was designed to set the immunity to one side and to permit discovery in suits by doctors claiming wrongful or arbitrary exclusion from hospital staff

[3]Literally, section 1157 establishes an immunity from discovery but not an evidentiary privilege in the sense that medical staff records are excluded from evidence. It stands in contrast with Evidence Code section 1156, which expressly subjects to discovery hospital staff studies made for the purpose of reducing morbidity or mortality, but excludes them as evidence. Because discoverability is our only concern, we need not decide whether section 1157 forms an exclusionary rule barring hospital staff records as evidence.

[4]The appellate courts of California have not yet considered tort liability of a hospital for negligent selection or retention of staff practitioners. (See *Joiner* v. *Mitchell County Hospital Authority* (1971) 125 Ga.App. 1 [186 S.E.2d 307, 51 A.L.R.3d 976], affd. 229 Ga. 140 [189 S.E.2d 412]; *Darling* v. *Charleston Community Memorial Hospital* (1965) 33 Ill.2d 326 [211 N.E.2d 253, 14 A.L.R.3d 860]; Annots. 51 A.L.R.3d 981, 14 A.L.R.3d 873; see also, 21 Hastings L.Rev. 1 (1969).

privileges. (See, e.g., *Willis* v. *Santa Ana etc. Hospital Assn.* (1962) 58 Cal.2d 806 [26 Cal.Rptr. 640, 376 P.2d 568]; *Ascherman* v. *San Francisco Medical Society, supra,* 39 Cal.App.3d 623; 17 Stan.L.Rev. 900.)

### III

 We examine each of the affected staff committees to ascertain whether it fits the statutory description ". . . having the responsibility of evaluation and improvement of the quality of care rendered in the hospital . . . ."

CREDENTIALS COMMITTEE: According to petitioner's supporting declaration, the credentials committee screens applicants for staff privilege, collects information concerning the applicants' competence and submits its recommendations to the staff executive committee and the hospital board of directors. The Joint Commission's description goes beyond petitioner's. The credentials committee has the additional task of periodic appraisal of all information regarding the competence of incumbent staff members and of making recommendations for reappointment and assignment to various departments and clinical services. (Accreditation Manual, Medical Staff, p. 6; Guidelines, pp. 38-39.) Thus the credentials committee's inquiries and records reflect not only the applicant's training and activity before he served in the hospital, but also incumbent staff members' experience within the hospital.

RECORDS COMMITTEE: Petitioner's declaration and the Joint Commission's published standards contain compatible descriptions of the records committee. All significant clinical information must be incorporated in each patient's medical record, which then becomes a basic tool in that patient's further treatment and simultaneously a source for the evaluation of medical care. (Accreditation Manual, Medical Staff, p. 7; *id.,* Medical Record Services, pp. 1-3.) According to hospital standards, the record is maintained for the benefit of the patient, the staff and the hospital and cannot be divulged to others without the patient's consent. (*Id.,* Medical Record Services, p. 4.) The records committee of the staff conducts a monthly review of current records to assure their completeness and accuracy. (Guidelines, p. 40.)

TISSUE COMMITTEE: The published standards of the Joint Commission do not designate this committee by a precise title or functional description. Each medical staff is responsible for establishing the formal means of conducting the evaluation of medical care. (Accreditation Manual, Medical Staff, p. 7.) Whatever its organizational pattern, the staff must provide "an

appropriate peer group method" for regular audit of medical, surgical and obstetrical activities, including tissue review and analysis of necropsy reports; tissue review includes an evaluation of preoperative and postoperative diagnosis, the indications for surgery and actual diagnosis of surgically removed tissue; necropsies should identify the contributing factors and processes involved in terminal illness. (*Id.*, Medical Staff, pp. 6-7.) The demand for tissue and necropsy review is supplemented by a set of criteria for pathology services; for the pathologist's examination and diagnosis of all specimens removed during surgery; for the maintenance of specimen test records. (Accreditation Manual, Pathology Services, pp. 1-5.) In a large hospital, tissue review may be conducted within each clinical department; in a smaller hospital it may be conducted on a broader basis. (Guidelines, p. 35.) At Rideout Memorial Hospital, apparently, the latter approach is taken, for petitioner's moving papers describe a tissue committee which reviews surgical procedures for the purpose of evaluating the competence of the operating physicians.

EXECUTIVE COMMITTEE: The executive committee of the medical staff is the mechanism which provides a formal relationship with the chief executive officer of the hospital; it receives and acts upon the reports of medical staff committees. (Accreditation Manual, Medical Staff, p. 5; Guidelines, p. 37.) It reviews periodically all available information regarding performance and clinical competence of staff members and it initiates medical staff corrective or review measures when warranted. (Guidelines, p. 37.) Recommendations for grant or withdrawal of staff privileges are placed before the executive committee; the latter in turn makes its recommendations to the hospital's governing body, which has ultimate responsibility for the appointment and removal of staff members. (Accreditation Manual, Governing Body and Management, p. 6; *id.*, Medical Staff, p. 5.)

In view of these described functions, each of these committees meets the statutory specification of an organized committee of a hospital medical staff, "having the responsibility of evaluation and improvement of the quality of care rendered in the hospital . . . ." Consequently the records and proceedings of these committees reflecting inquiry into the qualifications of Dr. Petway are immune from discovery.

Let a peremptory writ of mandate issue, directing the respondent court to reconsider and act upon that portion of petitioner's pretrial discovery

motion directed at the hospital administration files (as distinguished from the files of medical staff committees). The petition is otherwise denied. Real parties in interest shall recover costs.

Regan, J., and Janes, J., concurred.