MARK H. MENNES, Adm'r of the Estate of Asuncion Villoso, Deceased, *et al.*, Plaintiffs-Appellees, *v.* SOUTH CHICAGO COMMUNITY HOSPITAL, Defendant-Appellant.

First District (3rd Division)    No. 80-598

Opinion filed June 24, 1981.—Rehearing denied August 7, 1981.

Lord, Bissell & Brook, of Chicago (Judy P. Perlman, Harvey R. Speigel, Harold L. Jacobson, and Hugh C. Griffin, of counsel), for appellant.

Goldberg & Goldberg, of Chicago (Michael J. Radtke, of counsel), for appellees.

Mr. JUSTICE WHITE delivered the opinion of the court:

On March 15, 1977, Mark H. Mennes, the administrator of the estates of Asuncion Villoso and of Unnamed Viable Fetus Villoso, and Simon P. Villoso brought this wrongful death action against South Chicago Community Hospital and two of its staff doctors, alleging that the deaths of Asuncion Villoso and her unborn child were caused by the negligence of the hospital and its doctors. The hospital was charged, among other things, with failing to check adequately the qualifications of Dr. Mangoor Shah and Dr. John Harrod to whom it extended privileges, failing to review adequately the qualifications and the work of staff physicians, and employing unskilled personnel in its emergency room. On February 6, 1978, defendant hospital was served with requests to produce certain specified information including "[a]ll material regarding the granting of privileges regarding all Defendant doctors."

In response to these requests the hospital filed objections asserting that the requested materials were privileged. After a hearing on the objections, the trial court, on November 20, 1979, ordered the hospital to comply with plaintiffs' request for discovery. The hospital refused, standing on its claim of statutory privilege. Thereupon, the trial court

found the executive officer of defendant hospital in contempt, and imposed a sanction. On appeal, the hospital challenges the validity of that contempt order.

Plaintiffs' position is that the material sought by their discovery request is not confidential and that the only information made confidential by section 1 of the medical studies act (Ill. Rev. Stat. 1961, ch. 51, par. 101 *et seq.*) is "that material used in the course of medical study for the purpose of reducing morbidity or mortality * * *." Section 1 of this statute, enacted in 1961, has been amended from time to time, expanding the list of medical units and institutions whose information, reports, memoranda, interviews, statements and other data were given confidential status. Amendments in 1976 and 1977 also extended confidentiality to additional material described as that which is "used in the course of internal quality control" or "for improving patient care." (Ill. Rev. Stat. 1977, ch. 51, par. 101.) These amendments also spelled out with more particularity the purposes for which the confidential material could be used. The section as amended, in February 1978 when the requests to produce were served on defendant hospital, read as follows:

> "*All information, interviews, reports, statements, memoranda or other data* of the Illinois Department of Public Health, Illinois State Medical Society, allied medical societies, or *committees or accredited hospitals*, including Patient Care Audit Committees, Medical Care Evaluation Committees, Utilization Review Committees, Credential Committees and Executive Committees, but not the original medical records pertaining to the patient, *used in the course of internal quality control or of medical study for the purpose of reducing morbidity or mortality, or for improving patient care, shall be strictly confidential and shall be used only for medical research, the evaluation and improvement of quality care, or granting, limiting or revoking staff privileges,* except that the claim of confidentiality shall not be invoked to deny a physician access to or use of data upon which a decision regarding his staff privileges was based." (Emphasis added.) Ill. Rev. Stat. 1977, ch. 51, par. 101.

We previously examined this Act in *Matviuw v. Johnson* (1979), 70 Ill. App. 3d 481, 388 N.E.2d 795, and interpreted section 1 as providing that "[a]ll information, interviews, reports, statements, memoranda or other data of medical executive committees shall be strictly confidential and used only for the purposes enumerated therein." In refusing to adopt a narrower construction of this grant of confidentiality, we said:

> "[T]hrough the Medical Studies Act, the legislature intended to bolster the effectiveness of in-hospital peer group review committees. To this end, the Act provided for a general policy of confidentiality for information obtained by such committees to

insure that those providing the information could speak freely." (70 Ill. App. 3d 481, 486.)

No persuasive argument has been submitted here that would compel us to reject the philosophy of *Matviuw* and adopt a narrow interpretation of the statute as suggested by plaintiffs. We agree with defendant hospital's contention that if all staff appointment material could be obtained and used against the hospital whenever a plaintiff urged a negligent staff appointment theory, the statutory goal of candid commentary would be compromised. Thus we cannot support the trial court's finding that hospital material regarding the granting and extension of staff privileges is discoverable under the Act. We hold the material was confidential.

Courts of other jurisdictions, when faced with this question, have reached a similar conclusion. The issue was addressed by the California Court of Appeals in *Matchett v. Supreme Court* (1974), 40 Cal. App. 3d 623, 115 Cal. Rptr. 317. As in the instant case, plaintiff in *Matchett* sought pretrial discovery of hospital and staff records pertaining to the selection and retention of certain doctors. The court was there called upon to construe a statute which provided in part that "records of a medical staff committee are immune from discovery when the committee has 'the responsibility of evaluation and improvement of the quality of care rendered in the hospital * * *.'" (40 Cal. App. 623, 627, 115 Cal. Rptr. 317, 319.) The California court found that records of the hospital credentials committee which screened applicants for staff privileges were immune from discovery. The court stated, "When medical staff committees bear delegated responsibility for the competence of staff practitioners, the quality of in-hospital medical care depends heavily upon the committee members' frankness in evaluating their associates' medical skills and their objectivity in regulating staff privileges." 40 Cal. App. 3d 623, 628, 115 Cal. Rptr. 317, 320.

The holding of the California court in *Matchett* appears to parallel the decision which this court made in *Matviuw*. Both cases make clear that, under the respective statutes, hospital documents relating to staff privileges are confidential.

It is noteworthy that even in the absence of a confidentiality statute courts have found minutes and reports of hospital committees privileged. In a leading case in this area, *Bredice v. Doctors Hospital, Inc.* (D.D.C. 1970), 50 F.R.D. 249, 250, *aff'd* (D.C. Cir. 1973), 479 F.2d 920, the court stated the rationale behind affording confidentiality to such proceedings:

> "Candid and conscientious evaluation of clinical practices is a *sine qua non* of adequate hospital care. To subject these discussions and deliberations to the discovery process, without a showing of exceptional necessity, would result in terminating such deliberations. Constructive professional criticism cannot occur in an atmo-

sphere of apprehension that one doctor's suggestion will be used as a denunciation of a colleague's conduct in a malpractice suit."

We will not subject hospital staff review committees to the ever impending threat of public or judicial scrutiny under the auspices of the discovery process. For us to rule otherwise would gravely hamper the effectiveness of such committees as well as defeat the legislative intent in this area.

Another of plaintiffs' points on appeal is that section 1 of the medical studies act as it appears in the 1979 Illinois Revised Statutes should not be given retroactive effect in this lawsuit. We find this argument without merit. Plaintiffs urge that the appropriate statute for review is the original draft enacted in 1961 (Ill. Rev. Stat. 1961, ch. 51, par. 101), which does not include the words "granting, limiting or revoking staff privileges." We have examined the statute and its various amendments up to this date and find that the statute was amended in 1976 to include this language. As such, the language was in effect at the time this lawsuit was filed in 1977 and also when the production requests were served in 1978.

Plaintiffs also contend that the hospital should not be permitted to assert a statutory confidentiality privilege without articulating how the statute was applicable or identifying the documents which fell within the scope of the production requests and obtaining a court ruling as to their confidential status. The trial court held a hearing on defendant's objection to plaintiffs' production requests. An evidentiary hearing or *in camera* inspection was unnecessary as the wording of the request to produce itself sufficiently established that the material sought was protected by the statutory privilege. Plaintiffs were seeking data relating to the granting of staff privileges to defendant doctors. This was clearly information used in the course of internal quality control, made confidential by section 1. The last clause of section 1 emphasizes the correctness of this reading of the statute by providing that this "confidentiality shall not be invoked to deny a physician access to data upon which a decision regarding his staff privileges was based." We have examined the case of *Walker v. Alton Memorial Hospital Association* (1980), 91 Ill. App. 3d 310, 414 N.E.2d 850, and find it distinguishable from the case at bar. Plaintiff in *Walker* requested information regarding hearings or meetings relative to a certain patient. In that case an *in camera* inspection by the trial court may have been necessary to determine whether or not the material sought was confidential. The defendant hospital association rather than submitting to such inspection stood on its claim of confidentiality and refused to supply the requested information. The trial court held this contumacious, and the appellate court affirmed.

The material sought in plaintiff's production requests relating to the granting of physician's privileges and their reappointment is confidential.

The order of the circuit court compelling defendant hospital to comply with said requests and the contempt order imposing sanctions for failure to do so should be reversed.

For the foregoing reasons, the judgment of the circuit court is reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed.

RIZZI, P. J., and McNAMARA, J., concur.