[No. A074227. First Dist., Div. Two. Dec. 2, 1996.]

RLI INSURANCE COMPANY GROUP, Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN
FRANCISCO, Respondent;
CALIFORNIA DEPARTMENT OF INSURANCE, Real Party in Interest.

[No. A074353. First Dist., Div. Two. Dec. 2, 1996.]

WESTERN GENERAL INSURANCE COMPANY, Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN
FRANCISCO, Respondent;
CALIFORNIA DEPARTMENT OF INSURANCE, Real Party in Interest.

**COUNSEL**

Lord, Bissell & Brook, David F. Hauge, Jeri Rouse Looney and John D. Buchanan for Petitioners.

No appearance for Respondent.

Daniel E. Lungren, Attorney General, Richard F. Finn, Deputy Attorney General, Nossman, Guthner, Knox & Elliott , Michael G. Thornton, Phyllis E. Andelin, Jackson, Tufts, Cole & Black, Kenneth J. Philpot and Erin L. McPherson for Real Party in Interest.

**OPINION**

**HAERLE, J.—**

## I. INTRODUCTION

This case arises out of a dispute over the discoverability of certain evidence requested by two insurance companies in their rate rollback hearings under the voter-enacted insurance reform measure, Proposition 103. In addition to the issue of discoverability of the requested documents, this case also presents the question of whether an aggrieved party may seek relief from an adverse discovery ruling of the administrative law judge (ALJ) assigned to hear the rollback case and, if so, how.

## II. Background

On November 8, 1988, the voters enacted Proposition 103, thereby significantly rewriting California law governing insurance rate regulation. A key component of the initiative was Insurance Code section 1861.01, subdivision (a), which mandated a one-time, 20 percent rollback of rates for the first year following the initiative.[1]

Various insurance companies challenged the constitutionality of the initiative. Our Supreme Court upheld its provisions, including the 20 percent rollback, subject to the right of an insurance company to demonstrate that some lesser rollback amount was constitutionally required to avoid confiscation. (See *Calfarm Ins. Co.* v. *Deukmejian* (1989) 48 Cal.3d 805, 816-826 [258 Cal.Rptr. 161, 771 P.2d 1247] (*Calfarm*).)

Regulations specify procedures for determining the rollback obligation of an individual insurer.[2] (Cal. Code Regs., tit. 10, §§ 2646.1-2646.5.[3]) The scope of a "company-specific hearing" is defined in Regulation 2646.4, which was summarized by our Supreme Court as follows: "Concerning the nature of a hearing for review of rates: such a hearing has two purposes. [Citation.] [¶] One is to determine whether the insurer has properly applied the relevant statutory and regulatory provisions, including generic determinations, in calculating the maximum or minimum permitted earned premium. [Citation.] [¶] The other is to determine whether the resulting maximum or

---

[1]The initiative also imposed a new system of rate regulation that requires the Insurance Commissioner's (Commissioner) approval before any rate may be changed.

[2]Our Supreme Court explained (and upheld) the substantive regulations governing rollbacks in the test case of *20th Century Ins. Co.* v. *Garamendi* (1994) 8 Cal.4th 216 [32 Cal.Rptr.2d 807, 878 P.2d 566] (*20th Century*). "Central" to the rollback regulations is what "is commonly referred to as the 'ratemaking formula.' (Cal. Code Regs., tit. 10, §§ 2644.2, 2644.3.)" (*20th Century, supra,* 8 Cal.4th at p. 250.) The formula defines the "constitutional percentage," the amount by which the rollback year rate may be reduced without effecting a confiscation (Cal. Code Regs., tit. 10, § 2645.9, subd. (b)), and specifies that rates shall be reviewed under "a single, consistent methodology" (*id.* at § 2643.1). For rollbacks, the regulations define the "minimum permitted earned premium" (*id.* at § 2644.3), prescribe how that quantity is to be calculated for each insurer (*id.* at §§ 2642.1, 2644.1, 2644.4, 2645.9), and mandate "[t]o the extent that the rates charged during the rollback period exceeded the minimum permitted earned premium, the excess shall be refunded to consumers with interest . . . ." (*Id.* at § 2645.3, subd. (a).)

The regulations include standards for expense-efficiency, for determining permissible profit, for calculation of the capital "used and useful" for providing insurance, and for exclusion of claimed expenses that the Commissioner has determined should not be properly charged to consumers. (See Cal. Code Regs., tit. 10, at §§ 2644.10, 2644.12, 2644.16, 2644.17, 2645.5, 2645.6.)

"The ratemaking formula is designed to yield a premium that the insurer should receive from its insureds in order to earn a sum amounting to (1) the reasonable cost of providing insurance and (2) the capital used and useful for providing insurance multiplied by a fair rate of return." (*20th Century, supra,* 8 Cal.4th at p. 251.)

[3]All further references to title 10 of the California Code of Regulations will simply be cited as "Regulation" followed by the applicable section number.

minimum permitted earned premium should be adjusted. [Citation.] A request for such an adjustment is referred to as a 'variance request.' " (*20th Century, supra*, 8 Cal.4th at p. 255.) In 1995, the Commissioner supplemented the rollback regulations with additional procedural regulations setting forth further details regarding the conduct of the hearings. (Regs. 2649.1-2660.03.)

Petitioners RLI Insurance Company Group (RLI) and Western General Insurance Company (Western General) are presently respondents in separate company-specific hearings to determine their individual rollback obligations.

Proposition 103 provides that rollback hearings shall be held in accordance with the Administrative Procedure Act (APA)[4] with certain exceptions. Government Code section 11507.6 governs requests for discovery. One of the categories of discoverable documents pursuant to that statute is "[a]ny other writing or thing which is relevant and which would be admissible in evidence." (Gov. Code, § 11507.6, subd. (e).) That section also provides that "[n]othing in this section shall authorize the inspection or copying of any writing or thing which is privileged from disclosure by law or otherwise made confidential or protected as the attorney's work product." (Gov. Code, § 11507.6, subd. (f), 3d par.)

RLI and Western General served discovery requests on the Department of Insurance (Department) pursuant to Government Code section 11507.6. The Department objected to producing certain documents, claiming that the documents were, for various reasons, privileged. Both insurers filed motions to compel production of documents.

Discovery disputes in rollback hearings are governed by statute and regulation. Government Code section 11507.7 provides for the filing of a petition to compel discovery in the superior court. (Gov. Code, § 11507.7, subds. (a)-(g), (i).)[5] The statute further provides for an aggrieved party to file

---

[4]The APA is composed of sections 11340 to 11529 of the Government Code. Sections 11500 to 11528 govern the conduct of hearings.

[5]Government Code section 11507.7 states in full:

"(a)   Any party claiming his request for discovery pursuant to Section 11507.6 has not been complied with may serve and file a verified petition to compel discovery in the superior court for the county in which the administrative hearing will be held, naming as respondent the party refusing or failing to comply with Section 11507.6. The petition shall state facts showing the respondent party failed or refused to comply with Section 11507.6, a description of the matters sought to be discovered, the reason or reasons why such matter is discoverable under this section, and the ground or grounds of respondent's refusal so far as known to petitioner.

"(b)   The petition shall be served upon respondent party and filed within 15 days after the respondent party first evidenced his failure or refusal to comply with Section 11507.6 or within 30 days after request was made and the party has failed to reply to the request,

a petition for writ of mandamus in the Court of Appeal for review of the superior court's order. (Gov. Code, § 11507.7, subd. (h).)

whichever period is longer. However, no petition may be filed within 15 days of the date set for commencement of the administrative hearing except upon order of the court after motion and notice and for good cause shown. In acting upon such motion, the court shall consider the necessity and reasons for such discovery, the diligence or lack of diligence of the moving party, whether the granting of the motion will delay the commencement of the administrative hearing on the date set, and the possible prejudice of such action to any party.

"(c)   If from a reading of the petition the court is satisfied that the petition sets forth good cause for relief, the court shall issue an order to show cause directed to the respondent party; otherwise the court shall enter an order denying the petition. The order to show cause shall be served upon the respondent and his attorney of record in the administrative proceeding by personal delivery or certified mail and shall be returnable no earlier than 10 days from its issuance nor later than 30 days after the filing of the petition. The respondent party shall have the right to serve and file a written answer or other response to the petition and order to show cause.

"(d)   The court may in its discretion order the administrative proceeding stayed during the pendency of the proceeding, and if necessary for a reasonable time thereafter to afford the parties time to comply with the court order.

"(e)   Where the matter sought to be discovered is under the custody or control of the respondent party and the respondent party asserts that such matter is not a discoverable matter under the provisions of Section 11507.6, or is privileged against disclosure under such provisions, the court may order lodged with it such matters as are provided in subdivision (b) of Section 915 of the Evidence Code and examine such matters in accordance with the provisions thereof.

"(f)   The court shall decide the case on the matters examined by the court in camera, the papers filed by the parties, and such oral argument and additional evidence as the court may allow.

"(g)   Unless otherwise stipulated by the parties, the court shall no later than 30 days after the filing of the petition file its order denying or granting the petition, provided, however, the court may on its own motion for good cause extend such time an additional 30 days. The order of the court shall be in writing setting forth the matters or parts thereof the petitioner is entitled to discover under Section 11507.6. A copy of the order shall forthwith be served by mail by the clerk upon the parties. Where the order grants the petition in whole or in part, such order shall not become effective until 10 days after the date the order is served by the clerk. Where the order denies relief to the petitioning party, the order shall be effective on the date it is served by the clerk.

"(h)   The order of the superior court shall be final and not subject to review by appeal. A party aggrieved by such order, or any part thereof, may within 15 days after the service of the superior court's order serve and file in the district court of appeal for the district in which the superior court is located, a petition for a writ of mandamus to compel the superior court to set aside or otherwise modify its order. Where such review is sought from an order granting discovery, the order of the trial court and the administrative proceeding shall be stayed upon the filing of the petition for writ of mandamus, provided, however, the court of appeal may dissolve or modify the stay thereafter if it is in the public interest to do so. Where such review is sought from a denial of discovery, neither the trial court's order nor the administrative proceeding shall be stayed by the court of appeal except upon a clear showing of probable error.

"(i)   Where the superior court finds that a party or his attorney, without substantial justification, failed or refused to comply with Section 11507.6, or, without substantial justification, filed a petition to compel discovery pursuant to this section, or, without

One exception to the application of the APA to rollback hearings, however, reads as follows: "[D]iscovery shall be liberally construed and disputes determined by the administrative law judge." (Ins. Code, § 1861.08, subd. (e).) Based upon this statutory language, there is no dispute in this case that RLI and Western General properly brought their motions to compel compliance with their discovery requests in the first instance before the ALJ's hearing their respective cases.

RLI brought its motion first. RLI's principal defense to its alleged rollback liability is that it voluntarily reduced its rates more than 20 percent in accordance with Insurance Code section 1861.01, subdivision (a). In an effort to support its position, RLI sought in its "Demand No. 34": "[A]ll writings and things related in any way to all insurers who have documented that they had already reduced their rates 20 % in accordance with Insurance Code section 1861.01[, subdivision] (a). Such insurers would include, but not be limited to: [¶] Carolina Casualty, Dentists Insurance Company, Golden Bear Ins. Co., Protection Mutual, United Fire & Casualty, Chubb Indemnity Ins. Co., Marine Indemnity Ins. Co., Michigan Mutual Ins. Co., Phoenix Assurance Co., USF Re Insurance Co., London Guarantee & Accident Co. of New York, Cincinnati Ins. Co., Central States Ins. Group, Westfield Companies, Arkwright Ins. Group, Lumbermans Underwriting Alliance, Taisho Marine & Fire Ins. Co., South Carolina Ins. Group."

Publicly available "Stipulation and Consent Orders" entered into by these 18 insurers and the Department contain the following (or similar) language: "The Department calculated under applicable regulations that Respondent was obligated to roll back its rates and to refund premiums collected on certain policies issued or renewed between November 8, 1988 and November 7, 1989 ('the Rollback Year'). However, Respondent has supplied data which satisfy the Department that Respondent in fact reduced its rates in the Rollback Year and has no further refund obligation. The information submitted by Respondent is in a public file available for inspection in the Department's San Francisco office." At the hearing on RLI's motion, counsel for the Department admitted that the documents sought by RLI are not in fact found in the Department's public files.

The Department has not promulgated regulations for calculating a voluntary rollback. Regulation 2645.9, subdivision (a), merely provides: " '[S]tatutory percentage' means the larger of [¶] . . . [¶] (ii) minus total 1989 direct

substantial justification, failed to comply with any order of court made pursuant to this section, the court may award court costs and reasonable attorney fees to the opposing party. Nothing in this subdivision shall limit the power of the superior court to compel obedience to its orders by contempt proceedings."

premium earned, excluding surety, credit, and financial guaranty insurance, adjusted to be on the rate level of November 8, 1987, multiplied by 0.8 . . . ." RLI contends that, based upon representations made by the Department in a motion to strike portions of RLI's written direct testimony, it believes that the Department intends to argue that RLI must demonstrate that it voluntarily rolled back its rates 20 percent on every individual policy that it issued, not on an aggregate basis. According to RLI, its discovery request is an attempt to ascertain the Department's working law for how a voluntary rollback is calculated and to determine whether that law is being applied to it the same manner as it has been applied to other insurers.

The Department objected to Demand No. 34 on the grounds that it was vague and ambiguous, overbroad, and unduly burdensome. The Department further objected that the documents sought were protected by the attorney-client, attorney work product, investigatory information, official information and deliberative process privileges. Finally, the Department objected that the documents were inadmissible and irrelevant pursuant to Regulation 2656.4, which declares certain settlement-related documents to be inadmissible and nondiscoverable.[6]

At the ALJ's request, RLI agreed to limit the documents sought under Demand No. 34 to three specific documents relating to ten specific insurers. On February 26, 1996, the ALJ issued a written order granting RLI's motion as limited. The ALJ ordered the Department to produce all versions created by the Department of documents related to 10 insurers entitled: "Historical Rate Level Change," "Calculation of Statutory Percentage," and "Summary of Rollback Results." The ALJ found that the documents were relevant to RLI's defense and were not privileged. In addressing the Department's claim that the documents were irrelevant and inadmissible pursuant to Regulation 2656.4, the ALJ concluded that the request as limited did not seek documents shielded in subdivisions (a) and (b) of the regulation and that subdivision (c) did not apply to rollback hearings. The ALJ also reasoned that "to the extent that matters are discoverable under Government Code section

___

[6]Regulation 2656.4, which is entitled "Inadmissibility," states:

"(a)   Discussions, admissions, concessions or offers to stipulate or settle, whether oral or written, made during any negotiation or settlement conference are confidential and inadmissible for any purpose in any proceeding.

"(b)   If a stipulation or settlement is not adopted by the administrative law judge, no evidence regarding the terms of the proposed stipulation or settlement shall be admissible for any purpose in any proceeding.

"(c)   The Commissioner's approval of an insurer's application or amended application without a hearing and without specific findings of fact and determinations of issues shall not constitute approval or precedent regarding any principle or issue in any other proceeding. Information of or regarding approval of another insurer's application is not discoverable or admissible for any purpose in any other proceeding."

11507[.6], it is doubtful that they can be placed out of bounds in discovery by way of an administrative regulation."

Viewing the ruling as in conflict with the decisions of other ALJ's, the Department elected to seek the Commissioner's review of the ALJ's order pursuant to Regulation 2655.1. Subdivision (e) of that regulation provides: "Any party who disagrees with a decision of the administrative law judge on a motion to compel discovery and desires review of the decision may, within five (5) business days of the date of service of the decision regarding discovery, request the Commissioner to review the discovery decision of the administrative law judge. . . . The request shall specify why the party believes the decision of the administrative law judge is in error. The Commissioner shall review the decision of the administrative law judge, as well as all pleadings filed in connection with the motion to compel discovery and the transcript of the hearing on the motion to compel discovery, and issue a decision within fifteen (15) days of receipt of the request to review. The hearing schedule shall be stayed during the time of the Commissioner's review."

On March 19, 1996, the Commissioner issued a "Response to Request by the California Department Insurance [*sic*] for Review by Commissioner of Administrative Law Judge Van Wye's Discovery Decision." In this response the Commissioner stated: "The documents ordered produced by the Administrative Law Judge relating to those other insurance companies are not relevant or admissible for any purpose in the proceeding to which RLI is a party. Those documents relate to settlements reached by the Department with other insurers to resolve their respective rollbacks without the need for a hearing or litigation and have no precedential effect. . . . Section 2656.4(a) expressly renders inadmissible for any purpose the documents ordered produced by the Administrative Law Judge. There is no permissible purpose for the production of the documents in question. The Commissioner hereby reverses the Order of Administrative Law Judge Van Wye insofar as it compels the production of documents in response to RLI's Demand No. 34."

In light of the Commissioner's order, the ALJ issued an order vacating his prior order granting the motion to compel. RLI then filed a petition in the San Francisco Superior Court pursuant to Government Code section 11507.7 or, in the alternative, Code of Civil Procedure section 1085. On March 29, 1996, the superior court issued an order to show cause requiring the Department to answer RLI's petition. The cause was briefed and a hearing held before Judge William Cahill.

On April 23, 1996, the superior court issued an order denying RLI's petition pursuant to both Government Code section 11507.7 and Code of

Civil Procedure section 1085. As gleaned from the transcript of the hearing, the superior court apparently was convinced that the documents sought by RLI were not relevant because the proceedings which generated the documents ended in settlements.

In the meantime, Western General was also seeking compliance with certain of its discovery requests. Western General's primary defense to its alleged rollback liability of $7,655,000 plus interest is that it is confiscatory on its face given that Western General's 1989 surplus was $7,921,000. The Department's position is that no financial hardship will result to Western General from paying the rollback so long as its out-of-pocket expenses for the rollback year are covered. The Commissioner has not promulgated regulations governing calculation of a minimally nonconfiscatory rollback amount.

According to Western General, the Department has performed certain financial hardship tests for Western General and other insurers, including Sterling Casualty Insurance Company (Sterling), one of Western General's direct competitors. The "Stipulation and Consent Order" between the Department and Sterling states: "The Department calculated under applicable regulations that Respondent is obligated to roll back their rates and refund premiums collected on certain policies issued or renewed between November 8, 1988 and November 7, 1989 ('the Rollback Year'). However, the Department's Financial Analysis Division has determined that Respondent would suffer serious financial hardship should it be compelled to pay a rollback at this time." Western General seeks documents relating to the hardship analyses conducted on both it and Sterling.

Western General also seeks documents relating to ACHD Insurance Company (ACHD). The Department and ACHD agreed to resolve ACHD's rollback obligation when its sole insured waived any claim to a rollback refund. Western General has received a waiver from one of its insureds of any potential rollback to which that insured may be entitled in an amount up to $1 million. Western General therefore seeks documents reflecting how the Department considered ACHD's premium waiver. Again, no regulations address the effect of a premium waiver on an insured's rollback calculation.

The Department objected to the production of the requested documents, principally on the grounds of privilege, relevance and inadmissibility, since the documents were the product of settlement discussions with each of the insureds. Western General filed a motion to compel before ALJ Alfred P. Knoll. After hearing, the ALJ entered a written order directing the Department to produce the following:

"(a) Regarding the case of ACHD Insurance Company . . . all writings and electronic material to include calculations, not within the attorney client or attorney work product privilege, that reference a waiver of rollback in the determination of ACHD Insurance Company's rollback liability.

"(b) Regarding the case of Sterling Casualty Insurance Company . . . all writings and electronic material to include calculations, not within the attorney client or attorney work product privilege, that reference profitability studies and that reference extraordinary dividend criteria and/or calculations in the determination of Sterling Casualty Insurance Company's rollback liability.

"(c) Regarding Western General Insurance Company, all writings and electronic material to include calculations, not within the attorney client or attorney work product privilege, that reference extraordinary dividend criteria and/or calculations in the determination of [Western General's] rollback liability."

The ALJ reasoned that the documents were relevant and were neither settlement documents nor privileged, with the possible exception of the attorney-client and work product privileges which were taken into account in his order.

On March 22, 1996, the Department requested that the Commissioner also review this discovery order. On April 8, 1996, the Commissioner issued an order (substantially similar to the one issued in RLI's case) directing the ALJ to reverse his order on the ground that the requested documents were settlement-related and, therefore, nondiscoverable under Regulation 2656.4, subdivision (a). The ALJ did so.

Western General then filed a verified petition in the San Francisco Superior Court seeking enforcement of its discovery requests pursuant to Government Code section 11507.7 or, in the alternative, seeking a writ of mandate, pursuant to Code of Civil Procedure section 1085, overturning the Commissioner's order.

On April 24, 1996, Judge Cahill issued an order to show cause requiring the Department to answer Western General's petition. After briefing and hearing, the superior court, as it had done in the RLI action, declined to grant the petition or issue the writ. Again, the superior court reasoned, inter alia, that the requested documents were not relevant to the administrative proceeding because the documents were related to settlements.

On May 13, 1996, RLI filed a petition for a writ of mandate with this court and sought an immediate stay of its administrative hearing. On May

15, this court ordered the administrative proceeding stayed and issued a *Palma*[7] notice.

On May 23, 1996, Western General filed a petition a for writ of mandate with this court. Western General also sought an immediate stay of its administrative hearing. That same day, this court again ordered the administrative proceeding stayed and issued a *Palma* notice.

After further briefing, on June 26, 1996, this court consolidated the two petitions and issued an order to show cause.

### III. DISCUSSION

#### A. *Procedural Claims*

■ The Department challenges this court's jurisdiction to hear the present writs. This challenge is an outgrowth of the parties' fundamental disagreement over the procedures for resolving discovery disputes in Proposition 103 rollback and ratemaking hearings. We address these procedural issues, including those relating to our jurisdiction, in the sequence in which they arose and ultimately determine that this court does have jurisdiction to issue a writ pursuant to Government Code section 11507.7, subdivision (h).

Our starting point in this analysis is Insurance Code section 1861.08, which was added by Proposition 103. As relevant to this proceeding, it provides: "Hearings shall be conducted pursuant to Sections 11500 through 11528 of the Government Code [APA], except that: . . . (c) the commissioner shall adopt, amend, or reject a decision only under Section 11517(c) and (e) and solely on the basis of the record. . . . (e) discovery shall be liberally construed and disputes determined by the administrative law judge."

Based upon this statutory language, the parties agree that discovery disputes are to be heard in the first instance, as they were in these two cases, by the ALJ assigned to the hearing, rather than by the superior court as provided in Government Code section 11507.7. The parties vehemently disagree, however, on what recourse an aggrieved party may pursue from an adverse ruling of an ALJ.

The insurers contend that Regulation 2655.1, subdivision (e), which provides for review of an ALJ's discovery order by the Commissioner, is

---

[7]*Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 180 [203 Cal.Rptr. 626, 681 P.2d 893].

invalid because it conflicts with Insurance Code section 1861.08, particularly subdivisions (c) and (e). We are not persuaded.

■ The Commissioner's authority to adopt regulations "as necessary to promote the general welfare" and facilitate the implementation of Proposition 103 is established. (*20th Century*, *supra*, 8 Cal.4th at pp. 272, 280 [substantive regulations]; *Calfarm*, *supra*, 48 Cal.3d at p. 824 [procedural regulations].) Whether the regulations are authorized by and consistent with Proposition 103 is reviewed independently. Whether the regulations are "necessary and proper for the implementation of Proposition 103 is scrutinized for arbitrariness and/or capriciousness." (*20th Century*, *supra*, 8 Cal.4th at pp. 271-272.)

■ As previously noted, Insurance Code section 1861.08 adopts the procedures of the APA for rate hearings, including rollback hearings, with certain exceptions. Subdivision (a) provides that "hearings shall be conducted by administrative law judges for purposes of Sections 11512 [conduct of hearing] and 11517 [decisions following administrative hearing]." (Ins. Code, § 1861.08, subd. (a).) Thus, the ALJ "exercise[s] all other powers relating to the conduct of the hearing." (Gov. Code, § 11512, subd. (b).)

The insurers argue that the Commissioner's authority in the hearing process is specified and limited by subdivision (c) of Insurance Code section 1861.08, which states: "the Commissioner shall adopt, amend or reject a decision only under Section 11517(c) and (e) and solely on the basis of the record . . . ." This language, the insurers argue, sets forth the sum total of the actions that the Commissioner may take in connection with a ratemaking or rollback hearing and impliedly precludes the Commissioner from injecting himself into the discovery process.

In our view, the insurers substantially overstate the purpose and effect of Insurance Code section 1861.08, subdivision (c). That subdivision refers to Government Code section 11517 which deals with, and only with, the *methodology* by which an administrative agency makes a final decision in a case decided in conjunction with an ALJ. That section sets forth, in subdivisions (a) through (d), four ways this may be done.[8] Clearly, by subdivision (c) of Insurance Code section 1861.08, the drafters intended to require that the Commissioner use the third of those four alternatives in deciding Proposition 103 ratemaking and rollback cases. Thus, by its plain terms, Insurance Code section 1861.08, subdivision (c), merely limits the Commissioner's choices regarding what methodology he must utilize in his review of a

---

[8]The fifth subdivision, (e), deals only with the ministerial issue of filing and service of the decision. (Gov. Code, § 11517, subd. (e).)

final decision of an ALJ. The statutory language does not explicitly place any other limits on the Commissioner's authority and we discern no implicit intent to do so. (Cf. *20th Century, supra*, 8 Cal.4th at p. 281.) Therefore, we are not persuaded that the Commissioner's regulation is unauthorized or conflicts with this statutory language.

The insurers also contend that the Commissioner's regulation conflicts with subdivision (e) of Insurance Code section 1861.08 which states that discovery disputes shall be determined by the ALJ. As they see things, this subdivision means that the ALJ determines such disputes *finally*. The Department, on the other hand, sees the impact of this subdivision quite differently. It argues that there is nothing in that subdivision which either implicitly or explicitly precludes the Commissioner from providing (as he has) for his own review of such decisions and that, in any event, the Proposition 103 discovery decision process is so different from that contemplated by Government Code section 11507.7 that the later Insurance Code section must be read as abrogating, at least for these purposes, the earlier Government Code section and its superior court review process.

In order to resolve these drastically conflicting contentions, we must first ascertain the meaning of Insurance Code section 1861.08, subdivision (e).[9] This subdivision is part of a statute which incorporates specified provisions of the APA, including Government Code section 11507.7, with certain exceptions. Section 11507.7 provides that discovery disputes are brought by petition to the superior court and may be reviewed by writ in the Court of Appeal. While Insurance Code section 1861.08, subdivision (e), clearly states an "exception" to the APA procedure for resolving discovery disputes, we are not convinced that, as the Commissioner contends, subdivision (e) was intended to wholly displace Government Code section 11507.7. The statute of which it is a part explicitly references and incorporates that statute. To the extent that a specific APA section is not to be applied to the context of a ratemaking or rollback hearing, Insurance Code section 1861.08 says so explicitly. To return to a previous example, subdivision (c) of Insurance Code section 1861.08 specifically states that the Commissioner must apply subdivision (c) of Government Code section 11517, thereby ruling out the application of section 11517, subdivisions (a), (b) and (d). By way of contrast, neither subdivision (e) nor any other subdivision of Insurance Code section 1861.08 explicitly references, much less vitiates, Government Code

---

[9]We are mindful of our duty to interpret Insurance Code section 1861.08 to effectuate the voters' intent in passing Proposition 103. We observe, however, that other than the language of Proposition 103 itself we are aware of no authoritative source for ascertaining the intent relevant to the procedural questions presented in this case. Not surprisingly, the ballot pamphlet does not mention the matters at issue here.

section 11507.7. In light of the statutory language, we are convinced that to interpret Insurance Code section 1861.08, subdivision (e) in the manner requested by the Department would, in essence, constitute a finding of a repeal of a statute by implication, a finding which is strongly disfavored. (E.g., *Western Oil & Gas Assn.* v. *Monterey Bay Unified Air Pollution Control Dist.* (1989) 49 Cal.3d 408, 419-420 [261 Cal.Rptr. 384, 777 P.2d 157].)

■ The law is that "statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible." (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) ■ Although the Department is correct in pointing out that Government Code section 11507.7 was obviously intended to apply to a different administrative model, i.e., one in which no administrative procedure for addressing discovery disputes exists, that does not mean that the remedies provided by that statute cannot coexist with administrative remedies, as the course of this litigation demonstrates. While the resulting review scheme is admittedly awkward, the administrative and judicial remedies are not mutually exclusive. In the absence of any clear intent to the contrary, we feel bound to maintain the integrity of both statutes to the maximum extent possible. Therefore, we reject the Department's contention that Insurance Code section 1861.08 displaces Government Code section 11507.7 and, instead, conclude that a petition to the superior court pursuant to the latter section remains available to a party aggrieved by rulings at the administrative level regarding discovery requests.[10] In turn, a party aggrieved by the superior court's ruling may seek review by petition for writ of mandate in the Court of Appeal pursuant to subdivision (h) of Government Code section 11507.7, as RLI and Western General did in this case.[11]

■ There remains the issue of whether the Commissioner himself has a valid role in resolution of these discovery disputes, i.e., whether his Regulation 2655.1, subdivision (e), is valid. Quite obviously, neither Proposition

[10]The Department brought to our attention the fact that amendments to Government Code section 11507.7, which will be effective July 1, 1997, will substantially change the way discovery disputes are decided under the APA. Under the revised statute, discovery disputes will be resolved by the ALJ. The provisions for petitions to the superior court and the Court of Appeal are deleted. We need not and do not decide the effect of the statutory amendments on the procedures outlined in this opinion.

[11]Having concluded that these petitions were properly before the superior court and are properly before us pursuant to Government Code section 11507.7, we do not address (1) the insurers' claim that Insurance Code section 1858.6 provides an alternative avenue of review of the Commissioner's order or (2) the Department's claim that the courts lack jurisdiction over these disputes under Code of Civil Procedure section 1085, which sets forth the procedures for obtaining a writ of mandate, because the insurers have failed to exhaust their administrative remedies by completing the hearings.

103 nor the APA nor the interplay of the two prohibits review by the Commissioner.[12] Moreover, it is apparent that Insurance Code section 1861.08 and Government Code section 11507.7 do not harmonize seamlessly. There is ample room for interpretation of the procedures that should be employed to decide discovery disputes in these proceedings. The Commissioner could reasonably conclude that the availability of an appeal of discovery disputes to the ultimate decision maker in these proceedings was necessary and proper. Such an appeal has the potential to promote uniformity in discovery matters, saving time and expense for all concerned. Furthermore, such an appeal provides any court that is subsequently asked to review the dispute with the opinion(s) of Commissioner on the issue(s) presented therein. Given the acknowledged lack of harmony in the two applicable statutes, we cannot say that the Commissioner's interpretation of the law as embodied in his regulation is arbitrary and capricious. Therefore, we reject the insurers' contention that subdivision (e) of Regulation 2655.1 is rendered invalid by subdivision (c) or (e) of Insurance Code section 1861.08.

## B. *The Discovery Disputes*

Having found that the RLI and Western General petitions are properly before us, we turn to the merits of the discovery disputes from which they sprang. For our writs of mandate to issue, we must be convinced that the trial court abused its discretion in affirming the orders of the Commissioner denying each insurer the discovery it seeks. (E.g., Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs 2 (The Rutter Group 1996) ¶¶ 15:34, 15:37, pp. 15-15, 15-16.)

We begin our analysis with the applicable APA discovery provision, which provides for discovery of "[a]ny other writing or thing which is relevant and which would be admissible in evidence." (Gov. Code, § 11507.6, subd. (e).) While Proposition 103 incorporates Government Code section 11507.6, it also provides that "discovery shall be liberally construed

[12]We note that a 1995 revision to Government Code section 11512, subdivision (b), of the APA adds the following sentence: "A ruling of the administrative law judge admitting or excluding evidence is subject to review in the same manner and to the same extent as the administrative law judge's proposed decision in the proceeding." Although this additional language is not operative until July 1, 1997, the Law Revision Commission's comments applicable to that subdivision indicates that the commission viewed the language as declaratory of existing law; it stated that the amendment was intended "to overrule any contrary implication that might otherwise be drawn from the language of subdivision (b)." While the amendment is obviously not dispositive of the issue of the Commissioner's authority to review discovery orders of the Department's ALJ's, we conclude that it does demonstrate an intent that section 11512, subdivision (b), in either its old or new form, not be interpreted to render an ALJ's interim findings nonreviewable.

. . . ." (Ins. Code, § 1861.08, subd. (e).) This statutory mandate requires that doubts as to discoverability should be resolved in favor of ordering disclosure. (Cf. *Colonial Life & Accident Ins. Co.* v. *Superior Court* (1982) 31 Cal.3d 785, 790 [183 Cal.Rptr. 810, 647 P.2d 86].) This policy is especially well taken when the discovery sought is of public records. (Cf. *County of San Diego* v. *Superior* Court (1986) 176 Cal.App.3d 1009, 1021 [222 Cal.Rptr. 484] [discovery of records and deliberations of committee reviewing hospital care].) Further, we find this mandate of liberality particularly useful and warranted in these administrative hearings, the scope of which is still to a large extent unresolved. (See *Fireman's Fund Ins. Co.* v. *Quackenbush* (9th Cir. 1996) 87 F.3d 290, 294-295.)

The Commissioner and the trial court concluded that the documents were irrelevant because they were settlement related. In reaching his determination, the Commissioner relied upon Regulation 2656.4, subdivision (a). The trial court did not specify whether it relied upon that regulation or general principles of relevancy. Regardless, we conclude that it was an abuse of discretion to rule that these documents were "settlement" documents and therefore irrelevant or under the protection of the regulation.[13]

RLI seeks documents setting forth specific calculations from the Department's files on the rollbacks of 10 insurers. Each of these 10 insurers and the Department entered into stipulation and consent orders that contain language to the effect that "Respondent has supplied data which satisfy the Department that Respondent in fact reduced its rates in the Rollback Year and has no further refund obligation." According to this language, the parties did not settle[14] or compromise their claims; instead the Department applied rules and made findings of no further liability. The criteria the Department applied to reach these findings are highly relevant given that the regulations do not define how such determination should be made. (See Reg. 2645.9, subdivision (a).) In the absence of regulatory guidance, the Department must reasonably expect the insurers to look to any "working law" the Department has developed on the subject.

---

[13]Because we conclude that the documents in question fall outside the protection of the regulation, we do not reach the question of whether the regulation exceeds the Commissioner's authority.

[14]The Department points out that the term "settlement" is defined in Regulation 2651.1, subdivision (j). The insurers contend that this definition should not be applied to documents drafted and executed prior to the promulgation of the regulation. Assuming for the sake of argument that it should be so applied, we are convinced that the documents sought by the insurers do not fall within this definition. In each case, the documents state that the Department applied rules or performed analyses and determined that the insurers had no remaining rollback obligation. While each insurer was no doubt happy to accept such a finding, to label this process a "settlement" would contort the word beyond recognition and is not required by the regulation.

The Department contends that the documents requested have no precedential effect and therefore are irrelevant. As our colleagues in the Third District wrote in addressing a similar argument, albeit in the context of a California Public Records Act request: "Whether or not the Board is legally bound by its working law is not controlling. The records sought will disclose the Board's practices in applying its regulations to the cases coming before it and therefore its working law. . . ." As our colleagues further recognized: "It is in the application of a rule to the facts of a case that its meaning is frequently disclosed." (*State Bd. of Equalization* v. *Superior Court* (1992) 10 Cal.App.4th 1177, 1185, 1186 [13 Cal.Rptr.2d 342].) Although the Department's working law may not bind it, it is relevant and potentially highly persuasive evidence. In a hearing the scope of which is not clearly defined, the insurers are entitled to learn whether or not the Department has developed any working law in the areas requested and if so, what that law is.

With respect to the documents sought by Western General, the stipulation and consent order entered into by the Department and Sterling states that, although a rollback was owing, the Department's "Financial Analysis Division has determined that Respondent would suffer serious financial hardship should it be compelled to pay a rollback at this time." Again, according to this document, the parties did not compromise or settle; instead the Department applied rules and determined that Sterling should not be required to pay. Again, the criteria employed by the Department in making such a decision are highly relevant given that the regulations also do not clearly define how such a determination should be made. A fortiori, any financial hardship calculations made regarding Western General itself would also be highly relevant and not within any settlement umbrella.[15]

Western General also sought documents relating to the resolution of ACHD's rollback. In the stipulation and consent order between this insurer and the Department, the Department determined that ACHD had no rollback obligation because its sole insured waived any refund. Western General contends that this determination makes clear that waivers are considered in connection with determining rollback obligations, even though they are not addressed in the regulations. Western General seeks documents which reflect how such waivers are considered. Again, we conclude that there was no settlement with ACHD and, in any event, the request merely asks for working law, not settlement information.

---

[15]The Department characterizes as outrageous the possibility that Western General could be given access to the settlement notes of the Department and argues that such a ruling would be unprecedented. We observe, however, that such settlement items are usually nondiscoverable because they are protected by either the attorney-client privilege or attorney work product doctrine. The ALJ excepted from its order any documents so protected.

Although the ACHD documents are not "settlement-related," we are not convinced, however, that the superior court abused its discretion in declining to compel discovery of these documents. As the Department argued before the ALJ, the situations of ACHD and Western General are very different. ACHD received a waiver from its *sole* insured. Western General, however, has received a limited waiver from *one* of its insureds.[16] Obviously, it was not in the public interest to expend resources to determine the rollback liability of ACHD when its sole insured waived its right to receive any rollback. ACHD's case is simply not similar enough to the Western General case to prove anything of relevance at Western General's hearing. The superior court therefore properly declined to compel discovery of these documents and we will not consider this request further.

We turn to the question of whether the remaining requested documents fall within the ambit of Regulation 2656.4, subdivision (a), which states: "Discussions, admissions, concessions or offers to stipulate or settle, whether oral or written, made during any negotiation or settlement conference are confidential and inadmissible for any purpose in any proceeding." As explained above, we are unconvinced that the resolutions of the rollbacks were settlements. Further, the record is devoid of *evidence* that any of the documents sought were created as part of settlement negotiations or a settlement conference as required by the regulation. By its own terms, the regulation has no application in these cases and the Commissioner abused his discretion by concluding otherwise. (Cf. *Brewer* v. *Patel* (1993) 20 Cal.App.4th 1017, 1022 [25 Cal.Rptr.2d 65] [where Commissioner's interpretation rendered a portion of regulation surplusage, was inconsistent with prior interpretation, and was contrary to the plain meaning of language used, it was not entitled to any deference].)

The Department also relies upon the statutory settlement privilege found in Evidence Code section 1152, subdivision (a).[17] The scope of the protection provided by this subdivision is even narrower than that of the regulation. The statute renders certain evidence "inadmissible to prove [a party's] liability for loss or damage . . . ." Because the documents sought would be used for other purposes in the administrative proceeding, the documents are not rendered inadmissible (and therefore nondiscoverable) by this statute.

■ The Department further claims that the documents are protected from discovery by the "deliberative-process privilege," which it claims to

---

[16]The record is devoid of information regarding the percentage of Western General's rollback liability waived by this insured.

[17]That subdivision states: "Evidence that a person has, in compromise or from humanitarian motives, furnished or offered or promised to furnish money or any other thing, act, or service to another who has sustained or will sustain or claims that he or she has sustained or will sustain loss or damage, as well as any conduct or statements made in negotiation thereof, is inadmissible to prove his or her liability for the loss or damage or any part of it."

derive from Evidence Code section 1040 and *United States* v. *Morgan* (1941) 313 U.S. 409 [85 L.Ed. 1429, 61 S.Ct. 999] (*Morgan IV*) and its California progeny. We again are not persuaded that the documents are protected from discovery.

We begin by observing that the Department's contention on its face appears to merge three related, but separate, privileges (the official information privilege of Evidence Code section 1040 and the common law deliberative process and mental process privileges) in an attempt to construct a privilege of greater scope than its separate parts. We reject this attempted bundling and address the privileges separately.

First, while the Department uses the label "deliberative-process" privilege, *the authority cited in support of its contention is limited to the statute and the* cases deriving from *Morgan IV*, which is recognized as the seminal case for the mental process privilege. We accordingly look beyond the label employed to the substance of arguments actually raised.

Second, although the Department refers to the statutory official information privilege, it makes no effort to demonstrate that the documents fall within the protection of that privilege; indeed, the Department does not even specify whether it contends that the documents fall within the absolute or conditional privilege provided by the statute. Rather, the reference simply appears to be an understandable, but misguided, attempt to find a statutory anchor for the common law mental process privilege. Since we are not required to consider points not supported by argument, we decline to decide whether the documents are protected by Evidence Code section 1040. (E.g., *Kim* v. *Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979 [21 Cal.Rptr.2d 834].)

We, therefore, turn to the only argument cogently developed in the Department's brief, i.e., that the documents are protected under *Morgan IV* and its California progeny. We again disagree. In every instance in which this privilege has been applied or otherwise relied upon in published authority in this state (including but not limited to the decisions cited by the Department), the privilege was used to prevent inquiry into the mental process underlying an administrative decision that was *undergoing direct review by a court*. That plainly is not the situation here and this distinction renders the doctrine inapplicable.

First and foremost, we are not at liberty to expand the scope of the common law privilege and to apply it in these proceedings to bar discovery would obviously require an expansion. ■ Our Supreme Court has held

that evidentiary privileges spring exclusively from our Evidence Code. According to the court, ". . . the Legislature has codified, revised, or supplanted any privileges previously available at common law: the courts are no longer free to modify existing privileges or to create new privileges." (*Pitchess* v. *Superior Court* (1974) 11 Cal.3d 531, 540 [113 Cal.Rptr. 897, 522 P.2d 305]; see also Evid. Code, § 12, subd. (c) ["The provisions of Division 8 [of this Code] relating to privileges shall govern any claim of privilege . . . ."].) The Evidence Code does not refer to either the mental process or deliberative process privileges. Therefore, we are not free to expand the scope of the privilege to protect documents unrelated to an administrative decision that is currently subjected to direct judicial review. (*In re California Public Utilities Com'n* (9th Cir. 1989) 892 F.2d 778, 781-782 [declining to expand California version of *Morgan IV* privilege to discovery request of administrative agency in private litigation unrelated to judicial review of agency action].)

▮ Moreover, we believe there is good reason why the privilege has not been applied in cases like the present ones. As applied in this state, the *Morgan IV* privilege primarily rests upon the appropriate function and scope of judicial review of an administrative decision. The court's function is to review the decision, not the reasoning underlying it; therefore, inquiry into the mental process of the decision maker is irrelevant and inefficient and thus prohibited. (See *County of San Diego* v. *Superior Court, supra*, 176 Cal.App.3d at pp. 1024-1025 [reviewing cases]; see also (*U.S.* v. *Hooker Chemicals & Plastics* (W.D.N.Y. 1988) 123 F.R.D. 3, 23-27 [scholarly appendix of special master tracing development of the mental process privilege in the federal courts].) While there are sound policy reasons for protecting agency deliberations in order to encourage candor, there also is "a manifest public interest in the avoidance of secret law and a correlative interest in the disclosure of an agency's working law. [Citations.] The revelation of an agency's working law promotes its accountability to the public and the consistent, predictable and nonarbitrary application and enforcement of the law. [Citation.]" (*State Bd. of Equalization* v. *Superior Court, supra*, 10 Cal.App.4th at pp. 1185-1186.) An agency should not be permitted to invoke the mental process privilege as a shield to permit an agency to develop a body of "secret, working law." (*Ibid.*) Here, the documents sought by RLI and Western General have only a tangential relationship to any mental process or deliberations of the Commissioner. What the documents will reveal is any rule or practice applied to analogous situations in the rollback context. Such information is the essence of working law and the information should be made available to the insurers. (Cf. *County of San Diego* v. *Superior Court, supra*, 176 Cal.App.3d at p. 1027 [ordering production over claim of *Morgan IV* privilege of raw data, detailed findings and standards employed].)

In summary, we conclude that the requested documents are not protected from discovery by any privilege or applicable regulation. We also conclude that the requested documents, with the exception of the documents relating to ACHD, are relevant and that the Department must, accordingly, be compelled to produce them.

## IV. Disposition

In case No. A074227, let a peremptory writ of mandate issue, directing the superior court to vacate its order of April 25, 1996, in the case of RLI Ins. Co. Group v. California Department of Insurance (Super. Ct. S.F. County, No. 977229), and enter a new and different order (1) granting the motion to compel on terms consistent with the initial decision of the administrative law judge, filed February 26, 1996, and (2) staying the administrative hearing until a reasonable time following production of the documents.

In case No. A074353, let a peremptory writ of mandate issue, directing the superior court to vacate its ruling of May 9, 1996, and subsequent written order if any, in the case of Western General Ins. Co. v. California Department of Insurance (Super. Ct. S.F. County, No. 977755), and enter a new and different order (1) granting the motion to compel on terms consistent with the initial decision of the administrative law judge, filed March 14, 1996, with the exception that the Department of Insurance should not be compelled to produce documents relating to the case of ACHD Insurance Company (Dept. of Insurance File No. RB-95-0036-00), and (2) staying the administrative hearing until a reasonable time following production of the documents.

The stay previously imposed herein, will remain in effect until the finality of this opinion as to this court. (Cal. Rules of Court, rule 24(a).)

Kline, P. J., and Lambden, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied March 12, 1997.